UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| SHAWN S.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 2:22-cv-00583-MG-JRS |
| | ) |
| MARTIN O'MALLEY,[2] Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

In April 2015, Plaintiff Shawn S. applied for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") from the Social Security Administration ("SSA"), alleging a disability onset date of December 5, 2013. [Filing No. 20-2 at 11.] His application was initially denied on July 15, 2015, [Filing No. Filing No. 20-4 at 4], and upon reconsideration on November 5, 2015, [Filing No. 20-4 at 22]. An Administrative Law Judge (the "ALJ") conducted a hearing on November 15, 2017. [Filing No. 20-2 at 36-64.] The ALJ issued a

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

decision on February 7, 2018, concluding that Shawn S. was not entitled to receive benefits. [Filing No. 20-2 at 8-22.] The Appeals Council denied review on March 6, 2019. [Filing No. 20-2 at 2.]

Plaintiff filed a complaint in Federal District Court, which led to a joint motion to remand filed by the Commissioner. The Magistrate Judge then remanded the claim back to the SSA for further proceedings. [Filing No. 20-2 at 25.] On August 11, 2022, the ALJ conducted a new hearing. [Filing No. 20-9 at 27-52.] The ALJ issued an unfavorable decision on August 29, 2022, [Filing No. 20-9 at 5-18].

On December 20, 2022, Shawn S. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [8.] For the following reasons, the Court **REMANDS** the decision of the ALJ denying Shawn S. benefits.

## I.
## STANDARD OF REVIEW[3]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for

---

[3] The regulations governing disability determinations for benefits under Title II and Title XVI are identical in virtually all relevant respects unless otherwise noted.

the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform His past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable

3

impairments, even those that are not severe." *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform His own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Shawn S. was 40 years old on October 30, 2012—the date of his alleged onset of disability. [Filing No. 22 at 2.] Shawn S. has completed high school through the 12th grade and has completed one year of college but did not obtain a certificate or degree. [Filing No. 22 at 2.] He served in the Army and the Navy and has past work experience as a correctional officer, order picker, security officer, accounting clerk, and boiler technician. [Filing No. 22 at 2.] Following the August 2022 hearing, the ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Shawn S. was not disabled. [Filing No. 10-2 at 21-34.] Specifically, the ALJ found as follows:

- At Step One, Shawn S. has not engaged in substantial gainful activity[4] since October 30, 2012 (the application date). [Filing No. 20-9 at 8.]

- At Step Two, Shawn S. had the following severe impairments: degenerative disc disease of the cervical and thoracic spine; obstructive sleep apnea; gastroesophageal reflux disease; a hiatal hernia; Barrett's esophagus; pre-diabetes and then non-insulin dependent diabetes mellitus; obesity; migraines; carpal tunnel syndrome; depression; posttraumatic stress disorder; sexual abuse of a child (victim); and physical abuse of child (victim). [Filing No. 20-9 at 8.]

- At Step Three, Shawn S. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 20-9 at 8.] As to the "paragraph B" criteria for Listings 12.04 and 12.15, the ALJ found that Shawn S. had "moderate" limitations in two areas: concentration, persistence, and pace, as well as interacting with others. and adapting or managing himself. The ALJ found he had moderate limitations in interacting with others and understanding, remembering, and applying information. [Filing No. 20-2 at 15.]

- After Step Three but before Step Four, Shawn S. had the RFC to perform a range of light work (20 CFR 404.1567(b)) defined as follows: sitting six hours during an eight-hour workday; standing and walking six hours during an eight-hour workday; lifting, carrying, pushing, and pulling twenty pounds occasionally and ten pounds frequently; occasionally climbing, stooping, kneeling, crouching, and crawling; no operating a motor vehicle; frequent fingering and handling bilaterally; no vibrating tools; no more than a moderate noise level as defined in the Selected Characteristics of Occupations; can understand, remember, and carry out simple instructions; can use judgment to make simple work-related decisions; occasional interaction with coworkers and supervisors; no interaction with the public; no work in crowds; and can deal with changes in a routine work setting. [Filing No. 20-9 at 12.]

- At Step Four, the ALJ found Shawn S. is unable to perform any past relevant work as an accounting clerk, stock clerk, appliance assembler, and picker packer.. [Filing No. 20-9 at 16.]

- At Step Five, the ALJ found that considering Shawn S.'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including collator operator, router, and laboratory sample carrier. [Filing No. 20-9 at 17.]

## III.
### DISCUSSION

---

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

Shawn S. argues that the ALJ erred by: (1) failing to address the state agency psychological consultants' opinions that were inconsistent with the ALJ's RFC, and (2) conducting a patently wrong subjective symptom evaluation.

### A. The RFC

Shawn S. argues that the ALJ erred by giving little weight to the state agency psychological consultants' opinions. Specifically, he argues that Drs. Neville and Larsen both indicated in their checkbox assessments that Plaintiff was moderately limited with his abilities to appropriately interact socially. [Filing No. 21 at 17.] The Plaintiff argues that the ALJ failed to give a reason for concluding that the Plaintiff's "ability to respond appropriately to supervisors was better than the consultants had assessed." [Filing No. 21 at 19], The Plaintiff cites to a litany of evidence supporting his argument that he becomes stressed out easily and could not maintain the social engagement necessary for substantive and sustained employment. [Filing No. 21 at 20-21.]

In response, the Commissioner argues that the ALJ appropriately relied on the opinion of consultative psychological examiner Dr. Maryman, who, in relevant part, opined that Plaintiff was not well suited for interacting with the general public, would be limited when adjusting and adapting to stressors and pressures of a workplaces, but that Plaintiff should be able to interact fairly well with co-workers and supervisors. [Filing No. 22 at 11.] The Commissioner also argues that the ALJ adequately accounted for the relevant limitations in crafting the RFC, he appropriately

credited Dr. Maryman's opinion, and the checkbox limitation cases Plaintiff cites are not analogous to the facts at hand. [Filing No. 22.]

In Reply, the Plaintiff emphasizes the holdings in her supportive case law and that the ALJ "must address medical opinions regardless of the source and explain why he rejected opinions that conflicted with his RFC finding." [Filing No. 23 at 3.]

The RFC represents "the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). *See* 20 C.F.R. § 404.1545(a)(1). "The RFC assessment must ... identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, Fed. Reg. 34474-01 (July 2, 1996). The Court's "role is to determine whether the ALJ applied the right standards and produced a decision supported by substantial evidence." *Jeske v. Saul*, 955 F.3d 583, 595-96 (7th Cir. 2020). "The ALJ is not required to address every piece of evidence or testimony presented but must provide a 'logical bridge' between the evidence and the conclusions so that [the Court] can assess the validity of the agency's ultimate findings." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

Here, the ALJ determined Shawn S. had the RFC to "to perform a range of light work, defined as follows: sitting six hours during an eight-hour workday; standing and walking six hours during an eight-hour workday; lifting, carrying, pushing, and pulling twenty pounds occasionally and ten pounds frequently; occasionally climbing, stooping, kneeling, crouching, and crawling, no operating a motor vehicle; frequent fingering and handling bilaterally; no vibrating tools; no

complex jobs tasks but capable of unskilled skilled and semiskilled work; occasional interaction with coworkers and supervisors; and no interaction with the public." [Filing No. 20-2 at 16.]

Because Shawn S. filed his application before March 2017, 20 C.F.R. § 404.1527(a)(1) governs the ALJ's evaluation of medical opinions. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1) (for claims filed before March 17, 2017). Under the SSA, the "RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5, at *20.

The ALJ did not commit reversible error in formulating the RFC. Any omission of discussion of the moderate limitations indicated by Drs. Neville and Larsen was harmless because the ALJ properly accounted for all moderate limitations assessed by the checkbox limitations. The state agency consultants indicated that Plaintiff was moderately limited in terms of social interaction in: (1) interacting appropriately with the general public, (2) accepting instructions and responding appropriately to criticism from supervisors, and (3) getting along well with coworkers and peers without distracting them or exhibiting behavioral extremes. [Filing No. 20-3 at 24.]

While giving great weight to Dr. Maryman's opinion, the ALJ further restricted Plaintiff by limiting him to simple tasks to lessen the pressures of a work environment. [Filing No. 20-9 at 3.] He also excluded (among other limitations) all work involving crowds and driving and explains how he accounted for RFC limitations related to hypervigilance, discomfort being around people,

8

panic, handling stress, difficulty dealing with crowds and loud noises. [*See* Filing No. 20-9 at 3, 1414.]

Moreover, the Court agrees with the Commissioner that the analysis in *DeCamp v. Berryhill*, 916 F. 3d. 671, 675-676 (7th Cir. 2019) is not analogous to the facts at hand. Here, the ALJ credited evidence at the hearing level that supported greater limitations than those espoused by the state agency consultants in their narrative opinions. Moreover, rather than rejecting opinions that conflicted with the RFC finding, the RFC finding does encapsulate the moderate limitations in the relevant checkbox limitations. And, unlike in *O'Conner-Spinner v. Astrue*, 627 F. 3d. 614 (7th Cir. 2020), the ALJ did include social limitations in the RFC. While the Plaintiff may not agree, the ALJ did build a logical bridge between these limitations and the record evidence, and his opinion will stand.

### B. The Subjective Symptom Evaluation

Plaintiff argues that the ALJ erred by not considering his previous work attempts to determine credibility under his subjective symptom analysis. [Filing No. 21 at 25.] For example:

> One job in 2019 lasted two weeks and ended because "a couple of employees got aggressive with [him]." Id. He was at another job in 2020 for "[a]lmost a year," but he said, "I started feeling paranoid around my co-workers. I have some, I guess trust issues with people." Id. at 31, R. 1716. During a vocational assessment with Dr. Merladet at the VA in 2013, Plaintiff reported a similar pattern starting out "well" at his jobs, however, over time, he gets "paranoid and starts developing grudges with employers." Dkt. 20-8 at 100, R. 1157.

[Filing No. 21 at 25.]

Plaintiff acknowledges the ALJ need not address every piece of evidence but argues the ALJ improperly cherry picked only the evidence supporting his conclusion. [Filing No. 21 at 25.] Plaintiff details a chronology of information (including psychotherapy visits evidencing paranoia and increased Abilify dosages) showing that any improvement he reached was not sustained.

9

[Filing No. 21 at 25-26.] Plaintiff also notes his unreasonable anger, targeted towards strangers in crowds, but also to family members such as his sister. [Filing No. 21 at 26.] Moreover, his medication efficacy was suffering, as shown by May 2019 appointment with Dr. Hilton. [Filing No. 21 at 27.] Finally, Plaintiff points to his treatment plan instructions requiring him to have two personal interactions before his next treatment visit (with someone other than his father) as proof that he could not function at the interpersonal level that sustained employment requires. [Filing No. 21 at 28.]

The Commissioner disagrees with Plaintiff and argues that the ALJ sufficiently evaluated Plaintiff's symptoms but didn't find his reports wholly reliable. [Filing No. 22 at 15.] The Commissioner points out that Plaintiff's medical records supported positive-outcome therapy and medication, and that Plaintiff's daily activities of independent living were adequately weighed. Moreover, Plaintiff presented with good affect and judgment during treatment session(s). [Filing No. 22 at 15.]

A reviewing court evaluating an ALJ's analysis of subjective symptoms may "disturb the ALJ's credibility finding only if it is 'patently wrong.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). Moreover, the ALJ's consideration of the SSR 16-3p factors (such as daily activities; the location, duration, frequency, and intensity of pain and other symptoms; factors that precipitate and aggravate the symptoms; medications; treatment; other measures to relieve pain or symptoms; and other relevant factors) does not need to be direct. *See Tilley v. Colvin*, No. 1:13-cv-1775, 2015 WL 926178, at *5 (S.D. Ind. Mar. 3, 2015).

Here, while the ALJ goes to great lengths to detail Plaintiff's daily activities, the Court finds he failed to confront key pieces of conflicting evidence. For instance, Plaintiff's treatment

plan indicates heavily restrictive functioning (attempting two personal interactions with a non-family member), Plaintiff's medication management appeared to be plateauing, and he was only leaving the house for medical appointments. [Filing No. 21 at 26-27.] This conflicts with the ALJ's impression that he could and did—drive independently and routinely. [Filing No. 20-9 at 14.] Most troubling, the ALJ cites to medication management as controlling Plaintiff's symptoms, but the record presents conflicting evidence as to improvement. Plaintiff's medication provider states that his PTSD nightmares and (and anger during waking hours) increased, [Filing No. 2-14 at 134], and records indicating his psychiatric medication "[was] no longer helping." [Filing No. 21 at 27.] These records conflict with the ALJ's subjective symptom analysis such that their impact must be reckoned with on remand.

## IV.
## CONCLUSION

For the reasons detailed above, the Court **REMANDS** the ALJ's decision denying Shawn S. benefits. Final judgment will issue by separate entry.

Date: 3/29/2024

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**